BROTHERS CLEANING SERVICE, INC., Plaintiff,

v.

CHAIR, COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED, et al., Defendants.

No. CIV.A. 96–2046 EGS.

United States District Court, District of Columbia.

Feb. 25, 1998.

J. Cobbie deGraft, Alexandria, VA, for Plaintiff.

Theodore C. Hirt, Caroline Lewis Wolverton, Department of Justice Civil Division,

Joseph Luman, Luman, Lange & Wheeler, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

SULLIVAN, District Judge.

This matter is before the Court on defendants' motions to dismiss, or in the alternative, for summary judgment, plaintiff's opposition, and federal defendant's reply thereto.[1] Upon consideration of the undisputed facts, the relevant statutes, regulations and case law, and the record herein, the defendants' motions to dismiss are **GRANTED**.

## I. BACKGROUND

Plaintiff, Brothers Cleaning Service, Inc. ("Brothers"), a minority-owned corporation, commenced this action against the Chair of the Committee for Purchase from People Who Are Blind or Severely Disabled ("the Committee") and against the National Industries for the Severely Handicapped ("NISH"), a designated "central nonprofit agency" pursuant to the Javits–Wagner–O'Day Act ("the JWOD Act"). Brothers alleges that the Committee and NISH violated the procedures prescribed by the JWOD Act and failed to follow the Committee's procedures by allowing a building cleaning contract to be placed on the procurement list it maintains.

The JWOD Act implements the federal government's policy to facilitate procurement from nonprofit agencies employing persons who are blind or severely disabled. Pursuant to the JWOD Act, the Committee is an independent federal agency responsible for establishing and publishing a procurement list consisting of commodities and services the Committee determines to be "suitable for procurement by the Government" by "qualified nonprofit agencies for the blind or other severely handicapped." *Id.* § 47(a)(1). The procurement list is a mandatory procurement source for the federal government.[2]

---

1. Defendant Committee for Purchase from People Who are Blind or Severely Disabled ("the Committee") filed a motion to dismiss, or in the alternative, for summary judgment. Defendant National Industries for the Severely Handicapped ("NISH") filed a motion to dismiss.

2. The procurement list consists of commodities and services that the Committee determines to be "suitable for procurement by the government", 41 U.S.C. § 47(a), from "qualified nonprofit agencies for the blind or other severely handi-

Under the Act, the Committee is required to designate one or more central nonprofit agencies, such as NISH, to "facilitate the distribution of orders ... among qualified nonprofit agencies." 41 U.S.C. § 47(c). As the "central nonprofit agency" representing "nonprofit agencies employing persons with ... severe disabilities," 41 C.F.R. § 51–3.1, NISH is responsible for evaluating the "qualifications and capabilities of its nonprofit agencies," *id.* § 51–3.2(b), and then providing the Committee with this information. Thus, NISH facilitates the Committee's procedures and administrative functions in the interest of nonprofit agencies that employ people who are severely disabled. *Id.* § 51–1.3.

## II.  FACTS

In 1992, Brothers contracted through the United States Small Business Administration to provide custodial services at facilities used by the Department of the Army at the Fort Leavenworth base in Kansas. The Army, through its contracting officer, orally requested in July 1994 that Brothers assume janitorial services for two newly constructed buildings, the Combined Arms Research Library and the General Instructional Facility, collectively referred to as Eisenhower Hall. Brothers agreed to perform and indeed performed custodial services at Eisenhower Hall from July 1994 through November 1994. However, a written contract modification was never drafted. Brothers submitted invoices and received payment for work performed during that period in accordance with the original oral request by the contracting officer.

In mid-November 1994, the contracting officer informed Brothers that its custodial services at Eisenhower Hall were no longer required. Helping Hand of Goodwill Industries Extended Employment Sheltered Workshop, Inc. ("Goodwill") received the contract beginning in December 1994, and Brothers was asked to vacate Eisenhower Hall so that Goodwill could take its place.

Brothers subsequently learned from the Army contracting officer that Goodwill's assumption of custodial services at Eisenhower Hall had been facilitated by NISH, pursuant to the JWOD Act and the Committee's implementing regulations. Brothers inquired as to the legitimacy of its dismissal and replacement with Goodwill. According to Brothers, the contracting officer informed it that the government was required under the JWOD Act to award the contract for Eisenhower Hall to Goodwill.

Brothers subsequently filed this action against the Committee and NISH seeking review of the Committee's and NISH's actions.

## III.  DISCUSSION

Brothers alleges that the Committee and NISH violated the procedures prescribed by the JWOD Act and failed to follow the Committee's procedures when the Committee added janitorial services for Eisenhower Hall to the procurement list.

Specifically, Brothers alleges that, under Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 702 *seq.*, the Committee's actions were arbitrary and capricious in (1) adding Eisenhower Hall to the procurement list after Goodwill had begun performing services at Eisenhower Hall; (2) permitting Goodwill to "assume performance of custodial services at Eisenhower Hall" (Compl.¶ 29) prior to Eisenhower Hall's addition to the procurement list; (3) failing to conduct an impact study of the effect of its decision on Brothers, in violation of 41 C.F.R. § 51–2.4(e); and (4) denying Brothers' request for reconsideration. In addition, Brothers claims that NISH's recommendation of Goodwill as a services provider for Eisenhower Hall prior to Eisenhower Hall's inclusion on the procurement list was in violation of JWOD Act.

█  In reviewing agency action under the APA, the statutory standard for judicial review of administrative action is highly deferential to the administrative agency. *See* 5 U.S.C. § 706. The APA provides that agency action may be set aside only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if the action failed to meet statutory, proce-

capped," as defined in the JWOD Act, *id.*   § 48(b)(3)-(4).

dural, or constitutional requirements. 5 U.S.C. § 706(2). Under these standards, the agency's decision is entitled to a presumption of regularity. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *American Fed'n of Gov't Employees v. Reagan*, 870 F.2d 723, 727 & n. 33 (D.C.Cir.1989).

■ The Court's role in reviewing the reasonableness of an agency's factual determinations is particularly limited under the APA because agency action is presumed to be valid and must be upheld if rationally based. *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C.Cir.1976) (en banc).

## A. Plaintiff's Claims Against the Committee

### 1. The Committee's Decision to Add Eisenhower Hall to the Procurement List

■ Plaintiff contends that the Committee violated the JWOD Act when it failed to publish notice of its addition of Eisenhower Hall to the procurement list within the required time frame. On February 6, 1995, NISH contacted the Committee about adding custodial services for Fort Leavenworth to the procurement list as required by 41 C.F.R. § 51–2.3. Under 41 C.F.R. § 51–2.3 and 41 U.S.C. § 47(a)(2), the Committee is required to publish a notice announcing a proposed addition to the procurement list "[a]t least 30 days prior to the Committee's consideration of the addition." The Committee published the required notice on February 10, 1995. The notice provided interested persons an opportunity to submit written data or comments on the proposed addition until March 13, 1995. (A.R. at 183.) Brothers did not submit a comment on the possible impact of the proposed addition. In June 1995, the Committee voted to add custodial services for Eisenhower Hall to the procurement list. The addition was published June 23, 1995, and made effective July 24, 1995. The Committee thus complied with the 30–day notice requirement and allowed interested persons to submit data and information

challenging the addition of Eisenhower Hall to the procurement list. The Court thus concludes that the Committee followed the procedures set forth under the relevant regulations and that the Committee's decision to add Eisenhower Hall was not arbitrary and capricious.

### 2. Employment of Goodwill

■ Plaintiff asserts that Goodwill should not have received a contract for janitorial services at Eisenhower Hall unless and until Eisenhower Hall was added to the procurement list. Plaintiff's claim fundamentally mischaracterizes both the authority of the Committee and the contracting scheme established by the JWOD Act. As the Committee correctly states, until a service is placed on the procurement list, a federal agency may, under various contracting authorities, contract with any provider, including a qualified nonprofit agency for the severely disabled, even before the qualified nonprofit agency becomes a mandatory sole-source for those services. (Def. Reply at 5–6.) Once a service is added to the procurement list, however, an agency must contract with one of the qualified providers.

The Committee has no authority to prevent a provider from being employed before a service is added to the procurement list. The Court must therefore conclude that the Army's decision to employ Goodwill at the base prior to Eisenhower Hall's addition to the procurement list was not under the control of the Committee and thus provides no basis for a claim against the Committee. Furthermore, it is not the Committee's responsibility to investigate or enforce Army compliance with acquisition regulations; such a duty would impose an unreasonable burden on the Committee's resources. *See McGregor Printing Corp. v. Kemp*, 20 F.3d 1188, 1192 (D.C.Cir.1994) (describing the scope of the Committee's activities and its limited resources). Consequently, the Court must also conclude that Brothers cannot state a claim either that the Committee failed to prevent Goodwill from being employed, or that the Committee failed to investigate such employment.

### 3. Failure to Conduct Impact Study

██ Plaintiff contends that the Committee's failure to conduct an impact study on Brothers was arbitrary and capricious. Pursuant to the regulations, the Committee must conduct an adverse impact analysis on the "current contractor" or the "most recent contractor" before making an addition to the procurement list. 41 C.F.R. § 51–2.6. Plaintiff claims that it should have been considered the current contractor for Eisenhower Hall because it was performing "on call" services there.

Based on the evidence before it, the Committee concluded that Brothers was not the current contractor at Eisenhower Hall between August and November 1994. (Compl. ¶¶ 19, 29, 35 & A.R. at 1, 300.) Neither Brothers' original nor modified contract listed Brothers as the contractor for Eisenhower Hall—Brothers' original janitorial contract for Fort Leavenworth was not base wide, and the modified contract, signed on December 12, 1994, after Eisenhower Hall had been built, did not add Eisenhower Hall to the contract. In addition, the contracting office considered the services Brothers performed to be authorized under the "on call" provisions of Brothers' contract, and Brothers charged the Army a premium "on call" hourly rate for those services (A.R. at 263–290). Finally, the invoices in the administrative record show Brothers only performed periodic custodial services at Eisenhower Hall: Brothers' services were not performed on a regular basis, except for weekly cleanings during the month of November 1994; and, during several periods of time, Brothers did not perform any services for Eisenhower Hall. (A.R. at 236, 239, 246, 266–67, 279, 290.)

On the basis of the record before the Committee, the Court concludes that the Committee could reasonably have decided, when it considered adding Eisenhower Hall to the procurement list in June 1995, that Brothers was not the current contractor for Eisenhower Hall. The Committee was therefore under no obligation to conduct an impact study on Brothers because the Committee reasonably concluded, based on the administrative record, that Brothers was not the "current" or "most recent contractor". *See* 41 C.F.R. § 51–2.4(a)(4)(ii); *see also McGregor*, 20 F.3d at 1193 & n. 5; *Barrier Indus., Inc. v. Eckard*, 584 F.2d 1074, 1082 (1978).

The Court thus concludes that the Committee complied with all of the applicable procedural requirements prescribed in the APA and the JWOD Act. Furthermore, the Court concludes that the Committee's decision—finding that Goodwill, and not Brothers, was the current contractor—was not arbitrary or capricious.

### 4. The Committee's Decision Not to Reconsider Its Addition of Eisenhower Hall to the Procurement List

██ Brothers next claims that the Committee's decision not to reconsider its decision to add Eisenhower Hall to the procurement list was arbitrary and capricious. The Committee "may reconsider its decision to add items to the procurement list if it receives pertinent information which was not before it when it initially made the decision." 41 C.F.R. § 51–2.6. Even after considering the additional information provided by Brothers to the Committee pending reconsideration, the Committee nevertheless maintained its decision that Brothers was not the "current" contractor for Eisenhower Hall, and therefore, that the Committee was under no obligation to reconsider the impact on Brothers of placing Eisenhower Hall on the procurement list. Given the limited amount of work that Brothers performed at Eisenhower Hall (Def. Reply at 9–10.), the Committee could reasonably have decided that Brothers was not the "current contractor" for Eisenhower Hall, and therefore that the Committee did not need to assess the impact of its decision on Brothers. The Court therefore concludes that the Committee's decision not to reconsider placing Eisenhower Hall on the procurement list was not arbitrary or capricious.

### B. Plaintiff's Claims Against NISH

██ Finally, plaintiff asserts that NISH violated the letter and spirit of the JWOD Act when it facilitated Goodwill's employment at Eisenhower Hall prior to its addition to the procurement list. Plaintiff concedes that NISH is not a federal agency reviewable

**6**

under the APA. (Pl. Reply at 12.) *But see National Science and Law Center v. Legal Services Corp.*, 684 F.Supp. 296, 300 (D.D.C. 1987) (reviewing actions of a non-agency under arbitrary and capricious standard analogous to that of the APA).

Even assuming that NISH's actions were reviewable under a standard analogous to the APA's arbitrary and capricious standard, plaintiff's complaint nevertheless fails to state a claim against NISH. First, NISH does not have the power to make additions to the procurement list, but only to recommend qualified entities as providers. *See* 41 U.S.C. § 47. Thus, any action by NISH in recommending Goodwill as a provider would be consistent with its responsibilities under the JWOD Act. Second, NISH does not owe a duty to Brothers under the JWOD Act. Thus, any action by NISH to facilitate Goodwill's employment prior to the Committee's addition of Eisenhower Hall to the procurement list was not in violation of any duty to Brothers, but rather in keeping with NISH's responsibilities under the Act. Therefore, even reviewing NISH's actions under an arbitrary and capricious standard, this Court concludes that NISH's actions were not arbitrary and capricious or contrary to law.

### IV. CONCLUSION

For all the reasons stated above, the Court concludes that plaintiff has failed to state a claim upon which relief can be granted. Accordingly, it is hereby

**ORDERED** that defendants' motions to dismiss are **GRANTED**; and it is further

**ORDERED** that this case is **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk shall enter judgment for defendants, Chair of the Committee for Purchase from People Who Are Blind or Severely Disabled and National Industries for the Severely handicapped and against plaintiff, Brothers Cleaning Service, Inc.

### JUDGMENT FOR DEFENDANT

This Cause having been considered by the Court on motion for summary judgment, before the Honorable Emmet G. Sullivan, Judge presiding, and the issues having been duly briefed by all parties and the court having rendered its decision granting defendant's motion; now therefore, pursuant to the decision of the Court,

IT IS ORDERED, ADJUDGED AND DECREED that the defendant Chair of the Committee for Purchase From People Who are Blind or Severely Disabled, et al take nothing on the complaint against the plaintiff Brothers Cleaning Service, Inc. and that the said defendant have and recover costs from the plaintiff. .